IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DORIS NELSON

          PLAINTIFF                 Case No.

                                               Judge:

AND

AMAZON.COM.DEDC LLC

          DEFENDANT

## PLAINTIFF'S FIRST AMENDED PLAINTIFF'S COMPLAINT

**NOW COMES** Plaintiff, DORIS NELSON, and files this Amended complaint to redress her employer violating TITLE VII, 42 USC § 2000e et. Al, 42 USC 1981, The ADEA for discrimination based upon her race, sex, female, age, and creation of a hostile work environment due to her being a woman and for retaliation. For her amended cause of action, Plaintiff states as follows:

1. PLAINTIFF, DORIS NELSON ("NELSON"), is a female who resides in Kane County Illinois.

2. DEFENDANT, Amazon.com.dedc,LLC ("Employer") is a business located in Kane County, Illinois. Defendant engaged in business that affects interstate commerce that employs 20 persons or more persons within Illinois during at least 20 weeks of a year including 2022, 2023 and 2024.

3. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3) as well as supplemental jurisdiction from State claims.

4. Plaintiff was an employee of Defendant 42 USC § § 2000e(f).

5. Defendant is an employer as defined by 42 USC § 2000e(b).

1

6. Venue is proper in this Court as Defendant is located in Cook County Illinois and acts and occurrences occurred in Cook County Illinois.

7. Plaintiff timely filed a charge of discrimination under the with the Equal Opportunity Commission ("EEOC") in 2018 and it was cross filed with Illinois Department of Human Rights ("IDHR"). Said is attached as Exhibit 1. Plaintiff filed a second charge of discrimination in 2022. See exhibit 2.

8. The EEOC issued a final determination to Plaintiff finding probable cause on the first charge of discrimination. A copy of that charge is attached hereto as Exhibit 3.

9. The EEOC attempted to get reconciliation due to the finding of probable cause. The EEOC failed to act, and Plaintiff asked for a right to sue letter.

10. The EEOC sent notification by email to Plaintiff's former attorney on May 26, 2023, that something was placed on the EEOC portal. A few days later Plaintiff or her counsel opened the portal and found that both right to sue letters were issued. A Copy of the Right to sue letters are attached hereto as Exhibit 4.

11. Plaintiff's former counsel retired, and she could not find legal representation. Plaintiff filed this case pro se on August 24, 2023, to the clerk's office via the help desk for pro se litigants. Her initial filing sent on August 24, 2024, had the complaint (Docket #1) Civil Cover Sheet (Docket Number 2), Pro se Appearance (Docket # 3) a request for waiver of fees to proceed informa Pauperis (Docket # 4), a motion for attorney representation (Docket 5). Plaintiff spoke to the clerk's office and was told they would file stamp it in but that it might be until after the weekend due to the workload of the clerk. The clerk file stamped the case on August 28, 2023. Plaintiff submitted her complaint, motion to waive the filing fee, and other documents on May 24, 2024, to the Clerk with the Help Desks help on August 24, 2023.

2

12. On or about March 21, 2024, the Court denied Plaintiff's motion for informa Pauperis and Motion for Counsel without prejudice. The Court gave Plaintiff until April 12, 2024, to pay the filing fee. (Docket 11) Plaintiff paid the filing prior to April 12, 2024, and Court noted it on April 6, 2024 (Docket # 13).

13. Plaintiff submitted her Complaint to the Clerk's office within 90 days of Plaintiff receiving the right to sue letter from the EEOC.

14. Plaintiff has contacted the Illinois Department of Human Rights ("IDHR") and has requested a notice to opt out of her claims with the IDHR. Once the IDHR responds to her request and issues the opt out letter Plaintiff will seek to add those causes of action.

15. Plaintiff began working for Defendant in late 2017.

16. Plaintiff and other females who work for Defendant were subjected to Sexual and racial harassment from Noah De Vries ("De Vries") who is male. De Vries made numerous vulgar comments to Plaintiff and others about race and inappropriate sexual comments. De Vries also offensively touched Plaintiff and other employees of Defendant without their consent. De Vries also threatened to kill employees for making complaints against him/or doing anything to get him fired.

17. The abusive actions and comments of De Vries even caused Plaintiff to go on leave due to the stress and negative effects to her health from De Vries actions. The racial and sexual harassment became so bad that Plaintiff filed for a protective order against De Vries.

18. While employed by Defendant, DeVries for several months sexually and racially harassed numerous individuals who worked for Defendant. De Vries' actions were known to Defendant.

19. During 2017 and 2018, Plaintiff and other employees of Defendant made several complaints to Defendant's supervisors, managers and Defendant Human Resources Department about Noah De Vries's unlawful discrimination, actions, and abusive comments. The complaints by

3

employees to Defendant included threats by De Vries to other employees and De Vries touching other employees without the employees consent.

20. At least two of other employees of Defendant besides Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission. The EEOC has found that there was probable cause that Defendant violated Title VII. The EEOC has attempted to try get resolution for the other aggrieved woman, but to date it appears that nothing has been finalized.

21. De Vries's sexual and racial harassment to women who worked for Defendant was done out in the open and observed by many employees and management of Defendant.

22. Defendant has a policy relating to harassment and or bullying. Defendant asserts that they will not allow its employees to be sexually harassed or bullied by employees.

23. A male employee talking about his penis to a woman employee would violate Defendant's sexual harassment policy.

24. A male employee touching other employees breasts or buttocks without her consent would violate Defendant's sexual harassment policy.

25. A male employee touching and caressing other employees shoulders without their consent would violate Defendant's sexual harassment policy.

26. Using the word "N" word in front of an employee would violate Defendant's Racial harassment policy.

27. Threatening to kill an employee is also a violation of Defendant's policy for no bullying and or other policies of Defendant.

28. Defendant has an obligation to keep employees safe at work. Defendant knowingly failed to keep employees such as Plaintiff safe at work from De Vries.

29. Plaintiff complained to Defendant about the sexual and Racial harassment she was experiencing from De Vries to Human Resources in December 2017.

4

30. Plaintiff made a written complaint against De Vries due to his actions in January 2018. Defendant communicated to Plaintiff that De Vries was on a final written warning when she made her first complaint.

31. Defendant communicated to Plaintiff that De Vries was on a final written warning when she made her first complaint.

32. After Plaintiff made complaints of discrimination to Human resources and her supervisor, Defendant started to retaliate against Plaintiff.

33. Plaintiff made a second complaint in writing about De Vries' harassment on February l, 2018.

34. Plaintiff performed her duties in a satisfactory manner and has been a good employee for Defendant.

35. During the time that Plaintiff worked in 2017 and 2018, De Vries regularly and loudly made offensive, racist, and sex-charged comments and engaged in inappropriate and unwelcome touching to Plaintiff and other employees of Defendant. De Vries said things like, "yeah, I'm walking with my black bitches.,'· and "'my dog Pepper is the same color as Doris" black ass, right Doris?" and "Hey. Doris, do you know how I'm going to get promoted at Amazon? I'm going to suck d**ks, lots ofd**ks, that's how!" and "yeah, me and Doris, are fu**ing" and "F**k you bi**hes. Kiss my as*, I said you can just kiss my as*_,. He came up behind Plaintiff making sniffing noises, and said "oh, you smell so fu**ing good!.'

36. Initially Plaintiff and her female co·workers attempted to get De Vries to stop his abusive, unwanted, and unlawful behavior. Plaintiff and other employees took De Vries aside and spoke to him asking for him to stop as it was offensive and inappropriate. De Vries' response to Plaintiff and other employees was that he had behaved the same way all of his life and nobody was going to change him.

37. During the second week in December 2017, Plaintiff went to Human Resources and spoke with Caroline unknown last name. Plaintiff started to state that she needed to talk to the HR rep about Noah De Vries and his behavior. Caroline said that she expected that she knew what Plaintiff was going to say. Caroline told Plaintiff that they had a few bad complaints about him. Caroline told Plaintiff that she would speak with Joe Lee, Human Resource Manager, and get back to Plaintiff. Plaintiff did not hear back from anyone in Human Resources including Joe Lee or Caroline relating to her complaint.

38. Later in December, De Vries loudly and in the presence of coworkers, told Plaintiff that he could tell what was wrong with Black skin because it's shiny all the time:, and he made a comment about nappy hair.. Plaintiff asked De Vries if he was racist. De Vries said, "'I'm not a racist, Doris. Do you want to know how many black d**ks that's been up my as***le? I love me some black d**k, cause black guys' d**ks are huge, and they really know how to f'u'*k me real good." De Vries said this often to Plaintiff and other employees of Defendant. After the comments, De Vries started twerking, backing into Plaintiff. De Vries made intentional contact with Plaintiff at this time without her consent.

39. One of Defendant's employees who has the title of Ambassador, whose name was Olga (unknown last name), witnessed what occurred. Olga pulled De Vries away from Plaintiff to talk to him., Olga then came to Plaintiff and |told Plaintiff to report the incident to Human Resources right away. Plaintiff went to Human Resources and reported the incident to Caroline. Caroline told Plaintiff she would need to speak with Michelle Gong.

40. During the investigation into Plaintiff's complaint, Defendant did not interview Olga and ignored the fact that she witnessed De Vries' actions.

41. On January 17, 2018, Plaintiff's manager, Katie Poorten, approached Plaintiff and asked Plaintiff to speak with Ashley Jimenez in Human Resources. Plaintiff began explaining De

6

Vries behavior to Jiminez. Plaintiff was unaware of De Vries last name at that time. Jimenez refused to take information from Plaintiff that was relevant to a claim for discrimination. Jiminez refused to add Noah's name in the complaint and said that since Plaintiff she was not sure who "Noah" was and would not put his name in the complaint. Plaintiff stated she knew who he was. Plaintiff also wanted to add more incidents to the complaint, but Jimnez refused to add the incidents.

42. Poorten was a friend of De Vries and protected him.

43. Poorten's treated Plaintiff poorly due to Plaintiff filing a report against De Vries. Plaintiff was forced to file a complaint against Poorten due to her actions, intimidation and retaliation Plaintiff experienced.

44. On January 26, 2018, Plaintiff supervisor,. Poorten called Plaintiff aside and talked to Plaintiff about her production rate. Poorten said that the investigation was completed. Plaintiff doubted that Defendant was able to investigate the matter properly as she had not been contacted and it was a short time. No one spoke with Plaintiff about her about the investigation results.

45. After Plaintiff submitted her initial written complaint, Plaintiff witnessed De Vries cup his hands under coworker Brandy Payne's breast and "juggle" the woman's breast.

46. The following week, Defendant intentionally assigned De Vries to be Plaintiff's "problem solver' where he would work close to Plaintiff. Plaintiff believed the Company was trying to harm her by putting De Vries to work with her after she lodged a complaint against him.

47. While working with Plaintiff, De Vries approached Plaintiff and asked Plaintiff why she wasn't talking to him. Plaintiff replied that she was just doing her work and minding her own business. De Vries continued speaking to Plaintiff telling her that Human Resources kept calling him into their office, over and over again, to speak with him. He laughed and said that they

asked him a lot of questions, and he denied everything. DeVries said that he told Human Resources that they did not have any recording and he claimed that he was being targeted and singled out because he is gay. De Vries told Plaintiff that he threatened a lawsuit if he were fired.

48. Later that same shift, Supervisor Poorten ,,was playing music in their department. As Plaintiff was speaking with a coworker, De Vries interrupted and asked if Plaintiff liked the song that was playing. De Vries said "this is my favorite song! it reminds me of sex, because the music is fast - it's really fast.." Then, Mr. De Vries inappropriately caressed Plaintiff's arm. Plaintiff stepped back and said., "don't touch me, Noah!" She asked De Vries if his mind was always in the gutter. To which De Vries leaned over into Plaintiff's and said, "my mind is in the gutter?" Plaintiff replied yes and looked for Ms. Poorten. Plaintiff then went to find Poorten and complaint to her the harassment she encountered from De Vries. Plaintiff made the Complaint to Poorten. Poorten laughed at Plaintiff's statements about De Vries and found it funny and laughed aloud. Poorten wrote some notes down on a napkin and said she would report the incident to Human Resources and arrange for Plaintiff to have a meeting with HR the next day. Later on, Ashley (unknown last name) called Plaintiff into the Human Resources office. While Plaintiff was providing details of what occurred , Ashley became angry with Plaintiff about Plaintiff making a report.

49. As Plaintiff was leaving the Human Resources office, Plaintiff was approached by the head of operations, Sean (unknown last name). Sean told Plaintiff that he knew that she was frustrated with Human Resources and Sean did not blame her. Sean told Plaintiff that he believed everything she said and suggested that if Plaintiff punched out and went home, he would make sure that Plaintiff was paid for her 10-hour shift.

50. On February 5, 2018, Joe Lee, Human Resources Manager. sent Plaintiff an email, letting her know that she could stay home and be paid for all scheduled time until they completed their investigation.

51. On February 12, 2018., Plaintiff received an email from Mr. Lee advising her that Amazon had closed its investigation and that they had "taken appropriate actions based on these investigations and would like to discuss her returning to work. Defendant indicated that Plaintiff's complaints were unsubstantiated. Defendant failed to use the surveillance cameras throughout the facility that should have substantiated her claims of De Vries inappropriate physical contact Plaintiff and others. Plaintiff was offered the opportunity to work on other shifts. Plaintiff could not work on other shifts as she cares for her mother.

52. Plaintiff returned to work in mid-February. On her first clay back, during a '·huddle" at the beginning of her shift, De Vries put a water bottle between his legs and walked up behind employee Amanda ("Unknown last name") and stuck the bottle into her posterior.

53. Poorten engaged in retaliatory conduct toward Plaintiff. Poorten pulled Plaintiff off the line with increased frequency in front of other employees and spoke with Plaintiff in a loud voice When Poorten pulled Plaintiff off the line, the effect was to have boxes pile up on Plaintiff side which would force Plaintiff to fall behind. Defendant failed to get Plaintiff help for such situations. The actions of Poorten caused Plaintiff to fall behind work intentionally to create issues for Plaintiff. Additionally, in a way to retaliate against Plaintiff for making a complaint of discrimination, other managers of Defendant would come up to Plaintiff while she was working and told Plaintiff that she was doing things wrong even though Plaintiff was not doing anything wrong. The managers were working in concert to closely scrutinize Plaintiff's her. On March 9, Plaintiff learned that Poorten assigned one of the auditors to "keep an eye on" Plaintiff as a way to scrutinize Plaintiff's work more closely.

54. On March 10, 2018, Plaintiff due to the actions of De Vries went on short term disability. Plaintiff became ill due to De Vries actions of sexual and racial harassment of her. Plaintiff experienced high levels of stress and anxiety due to De Vries actions and the mistreatment from Amazon. Plaintiff blood pressure due to the acts of Defendant and De Bries became excessively high and dangerous to her health.

55. Defendant had a new investigation into De Vries' behavior while Plaintiff was on her leave of absence. One of Plaintiff's coworkers. Nidra Williams was called at the end of May while she was on vacation to answer questions by Michelle Gong. On June 8. Plaintiff received an email from Alexa Perrin, Executive Escalations Intake Coordinator. Williams was called into the Human Resources office when she returned from vacation to speak further with Ms. Gong. Defendant was informed that De Vries threatened in a very loud manner that if anyone causes him to lose his job, he would fu**ing kill them. Williams heard De Vries telling a coworker "do you know that Black as* bi**h Doris tried to get me fired?!'

56. Defendant after an investigation into De Vries actions in May/June 2018 investigation stated it would transfer the women who complained of Mr. De Vries' harassment to another department. De Vries was left employed in his same department. Even though De Vries was on a final written warning, Defendant still failed to fire De Vries or even stop his actions. Defendant allowed De Vries to continue humiliate and abuse other employees of Defendant.

57. On June 7, 2018, Defendant transferred a number of African American and Hispanic women who had worked with Plaintiff in the inbound department to Outbound. The Outbound department was a more physical job and less desirable. The reason Defendant transferred the woman was because Defendant refused to discipline De Vries' properly and wanted to keep De Vries employed. The transfer of the woman was done to force the woman to do a harder job and

so Defendant would discourage employees from making claims of discrimination against their employer.

58. Plaintiff returned to work in early July 2018. Her performance was excellent.

59. When Plaintiff returned in July 2018, Defendant told Plaintiff she was being transferred to the Outbound, but that Defendant needed to give her two weeks' notice, so she worked in her usual department. July 7, 2018. Defendant intentionally assigned De Vries to work next to Plaintiff as her "problem solver." Plaintiff found this unacceptable and retaliation as Defendant was requiring her to be around the person who threatened to harm her and others if they got him fired, offensive touched the plaintiff on several occasions and made rude, racist, and sexually offensive comments to Plaintiff. Due to the unsafe work environment, Plaintiff punched out and filed a complaint with Human Resources.

60. Defendant has a no tolerance policy for sexual or racial harassment.

61. Defendant violated its policies for sexual or racial harassment in how they treated De Vries.

62. Defendant had at least 4 different people make complaints about De Vries in 2017 and 2018 that he made racially inappropriate remarks and sexually harassed other employees.

63. Near the end of July 2018, De Vries had not been seen by other employees at Defendant's work. Defendant told employees that De Vries was fired for touching a male employee.

64. After Plaintiff made her complaints of discrimination, Plaintiff experienced other forms of adverse employment actions by Defendant. Other adverse employment actions against the Plaintiff by Defendant included

a. Closer supervision of the Plaintiff
b. Closer Scrutiny of Plaintiff's work
c. Defendant denied Plaintiff job promotions and training. Plaintiff applied for a job as a tugger but Defendant failed to interview or notify Plaintiff about the job.
d. Plaintiff made requests to transfer to other positions and shifts but Defendant denied Plaintiff transfers or other positions. Other employees who were similarly situated were

11

      allowed to transfer or move to other positions that did not make a complaint of discrimination of Defendant.
- e. Defendant denied Plaintiff training so that Plaintiff could move to other jobs.
- f. Defendant forced Plaintiff to work alone in the Tugger job when Defendant required two employees to do said job.

65. The actions of Defendant damaged the Plaintiff.

66. Defendant's discriminatory conduct toward Plaintiff was intentional, and it engaged "with malice or with reckless indifference to the federally protected rights" of Plaintiff.

## COUNT I TITLE VII

67. Plaintiff realleges paragraphs 1-66 in Count I as set forth herein.

68. 42 USC § 2000e et. Seq. makes it illegal to discriminate against someone because of their sex, race, or color. 42 USC § 2000e-2(a)(1) makes it an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's sex, race, or color.

69. Defendant received several sexual harassment complaints from female employees about De Vries in 2017 and 2018.

70. Defendant did not fire De Vries until a male employee was touched or subjected to sexual harassment by De Vries in approximately July 2018.

71. Defendant's differences in treatment of Plaintiff's terms and conditions of employment violated 42 USC § 2000e-2(a)(1).

## COUNT II HOSTILE WORK ENVIRONMENT

72. Plaintiff realleges paragraphs 1-71 in Count II as set forth herein.

73. 42 USC § 2000e et. makes it unlawful discrimination to sexually harass or create a hostile work environment for an employee based upon their race, color, or sex.

74. While employed by Defendant Plaintiff was subjected to unwelcome conduct on the basis of Plaintiff's race, color and/or sex that had the purpose or effect of substantially interfering with Plaintiff's work performance and/or created an intimidating, hostile, or offensive working environment.

75. The conduct which Plaintiff endured from De Vries and others who worked for Defendant was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

76. At the time the conduct occurred, Plaintiff believed that the conduct made her work environment hostile and/or abusive.

77. The statements and actions by De Vries and others who worked for Defendant were done on a regular basis and interfered with Plaintiff's ability to do her job and interfered with her ability to do work while working for Defendant. The acts of De Vries and other employees of Defendant became so severe, Plaintiff had to take medical leave.

78. De Vries threatened employees, assaulted employees placing them in reasonable fear of their safety and also physically touched employees in a sexual manner without their consent. Defendant was aware of this but failed to take remedial actions in a timely manner.

79. The derogatory statements and actions of De Vries were offensive, uninvited, and not welcomed by Plaintiff.

80. Defendant knew or should have known about the conduct alleged in this Complaint that were done to Plaintiff.

81. Defendant failed to take reasonable steps to correct the situation and/or prevent harassment from recurring to Plaintiff and others who worked for Defendant.

## COUNT III RETALIATION

82. Plaintiff realleges paragraph 1-81 into Count III as set forth herein.

83. Title VII of the Civil Rights Act of 1964 , 42 U.S.C. § 2000e-3(a), makes it unlawful employment practice for an employer to discriminate against any of his employees or to discriminate against any individual because he has opposed any practice made an unlawful employment practice.

84. Plaintiff was subjected to numerous forms of retaliation due to filing a complaint of discrimination against Defendant. A short time after Plaintiff made a complaint relating to the hostile work environment her supervisors began to closely scrutinize the Plaintiff and treat her differently in an inferior way to other employees.

85. Additionally, Defendant retaliated against the Plaintiff on several other occasions which included:

    a. Closer supervision of the Plaintiff
    b. Closer Scrutiny of Plaintiff's work
    c. Assigned a person to watch Plaintiff's work.
    d. Defendant denied Plaintiff job promotions and training. Plaintiff applied for a job as a tugger, but Defendant failed to interview or notify Plaintiff about the job.
    e. Plaintiff made requests to transfer to other positions and shifts but Defendant denied Plaintiff transfers or other positions. Other employees who were similarly situated were allowed to transfer or move to other positions that did not make a complaint of discrimination of Defendant.
    f. Defendant denied Plaintiff training so that Plaintiff could move to other jobs.
    g. Defendant forced Plaintiff to work alone in the Tugger job when Defendant required two employees to do said job.

86. Defendant's actions to Plaintiff were done to Plaintiff in retaliation for Plaintiff asserting her rights under TITLE VII ,42 U.S.C. § 2000e-3(a) and the retaliation provisions for 42 USC 1981.

## COUNT IV  42 USC 1981

87. Plaintiff realleges paragraph 1-86 into Count IV as set forth herein.

88. 42 USC 1981 makes it unlawful for an employee to be treated interior to other employees due to the employee's race.

89. The Plaintiff was a party to a contract with Defendant as an employee and employer.

90. The plaintiff attempted but was unable to be promoted, gain skills, or enjoy all benefits, privileges, terms, and conditions of the contractual relationship.

91. The Plaintiff's inability to be promoted by Defendant, gain training, or enjoy all benefits, privileges, terms, and conditions of the contractual relationship was "because of" Defendant's purposeful discrimination against the plaintiff on the basis of the plaintiff's race.

92. Additionally, Defendant subjected Plaintiff to a hostile and abusive work environment due to Plaintiff's race, Black.

WHEREFORE, Plaintiff, Doris Nelson, prays that this Court (i) declare that the employment practices complained of in this complaint are unlawful in that they violate Title VII; (ii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of Title VII; (iii) order the Defendant to make the Plaintiff whole including any fees for her medical bills and lost pay, and other monetary and non-monetary benefits, and prejudgment interest, all in amounts to be proved at trial; (iv) order that the Defendant pay Plaintiff a sum in excess of $300,000 as compensatory and punitive damages; (v) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance; (vi) order the Defendant to pay Plaintiff's costs and expenses and reasonable attorneys' fees as provided in the statutes incorporated herein in connection with this action; and (vii) order Defendant to pay the penalties (viii) grant such other and further relief to the Plaintiff as the Court deems just and proper.

## JURY DEMAND

**PLAINTIFF DEMAND A JURY RELATING TO THIS MATTER.**

/s/Steven D. Horak
   Steven D Horak # 6207126
   940 Knollwood Dr
   Buffalo Grove IL 60089
   847-877-3120
   Steve@stevenhoraklaw.com